UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORRAINE TAYLOR,

    Plaintiff,    Hon. Paul L. Maloney

v.    Case No. 1:17-cv-148

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 47 years of age on her alleged disability date. (PageID.69). She successfully completed high school and worked previously as a housekeeper and security officer. (PageID.55). Plaintiff applied for benefits on June 17, 2013, alleging that she had been disabled since May 5, 2013, due to cervical dystonia, degenerative disc disease, arthritis, nerve damage, fibromyalgia, agoraphobia, and depression. (PageID.69-84, 364).

Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.104-21, 226-69). On September 2, 2015, Plaintiff appeared before ALJ Bryce Baird with testimony being offered by Plaintiff and a vocational expert. (PageID.172-225). In a written decision dated December 14, 2015, the ALJ denied Plaintiff's claim. (PageID.45-57). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.35-39). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

3

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) fibromyalgia; (2) cervical dystonia; (3) degenerative disc disease; (4) anxiety disorder; and (5) personality and posttraumatic stress disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.47-50).

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; (2) during an 8-hour workday, she can sit for six hours and stand/walk for two hours; (3) she requires the option to alternate to standing from sitting for five minutes after every 30 minutes of sitting; (4) she can never climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs; (5) she can occasionally balance and stoop, but can never kneel, crouch, or crawl; (6) she is limited to simple, routine tasks; and (7) she can have occasional interaction with the public and co-workers. (PageID.50).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 225,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.213-18). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.        **Relevant Medical Evidence[2]**

On March 18, 2013, Plaintiff was examined by Dr. Charles Lapo. (PageID.587-93). Plaintiff reported that two recent incidents in which people touched her without her consent "re-awakened PTSD symptoms of childhood sexual and physical abuse." (PageID.587). The doctor reported that Plaintiff was "of above-average intelligence," "evasive," and "unbelievable." (PageID.592). The results of a mental status examination were otherwise unremarkable. (PageID.592). Plaintiff was diagnosed with PTSD and personality disorder. (PageID.592). Plaintiff's GAF score was rated as 55.[3] (PageID.593).

On April 24, 2013, Plaintiff reported that she was "feeling a difference" with her medications and that her "thought process is better." (PageID.640). The results of a mental status examination were unremarkable and the examiner noted that Plaintiff "seems to be doing well with current medications." (PageID.640-41). On June 25, 2013, Dr. Lapo reported that

---

[2] Plaintiff's claim concerns the ALJ's assessment of opinions regarding Plaintiff's non-exertional impairments. Accordingly, the following discussion of the relevant medical evidence is limited to Plaintiff's non-exertional impairments.

[3] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

"there is a significant attention-seeking component" to Plaintiff's behavior.  (PageID.744).  The doctor rated Plaintiff's GAF score as 55.  (PageID.745).  Plaintiff's medication regimen was modified.  (PageID.744).

On April 16, 2014, Plaintiff met with Dr. Lapo.  (ECF No. 1195-99).  The doctor reported that Plaintiff "seems quite alert, obviously intelligent and knowledgeable." (PageID.1196).  The doctor also noted that Plaintiff "talks over me, won't allow me to answer her questions; went into long monolog about why I need to Rx her narcotics."  (PageID.1196).  The doctor further observed that Plaintiff was "interrupting me throughout the session," but that "this does not appear manic but conscious and deliberate."  (PageID.1196).  Dr. Lapo concluded that Plaintiff "certainly does not look anxious or depressed."  (PageID.1196).

On May 20, 2014, Plaintiff met with Dr. Lapo.  (PageID.1182-86).  Plaintiff reported that she was "remembering more of [her] childhood" and recently experienced a dream in which her body "felt like it had been raped again."  (PageID.1183).  The doctor reported that Plaintiff was being hyperbolic "regarding her re-experiencing symptoms."  (PageID.1184).

On July 15, 2014, Plaintiff reported that she was experiencing "suppressed memories" of molestation.  (PageID.1165).  Dr. Lapo reported that Plaintiff "does not look depressed" and further noted that Plaintiff was "attention-seeking" and exhibiting "clear victimization themes."  (PageID.1165-66).  The doctor concluded that Plaintiff's "issues" were "overwhelming[ly] characterologic[al]."[4]  (PageID.1166).  Treatment notes dated February 10,

---

[4] Characterological is defined as "relating to, or based on character or the study of character including its development and its differences in different individuals."  See Characterological, available at https://www.merriam-webster.com/dictionary/characterological (last visited on February 26, 2018).

2015, indicate that Plaintiff is experiencing "good control" of her emotional issues "with current medication." (PageID.1253-54).

On March 3, 2015, Plaintiff met with Dr. Lapo. (PageID.1304-10). Plaintiff reported that her present medications were "effective." (PageID.1304). The doctor noted that Plaintiff's physical condition was "the elephant in the room." (PageID.1307). In this respect, Dr. Lapo reported that Plaintiff's "stated medical conditions. . . are vastly out of proportion to her presentation. She does not look like a sick woman." (PageID.1307). Plaintiff reported that she was experiencing anxiety for which she required medication. (PageID.1307). Dr. Lapo, however, observed that Plaintiff was exhibiting "a lot of drama." (PageID.1307). The doctor further noted that, "I cannot say that she was being untruthful with me, but I suspect that I was mislead." (PageID.1307). Plaintiff "complained of memory problems," but Dr. Lapo "did not see any" evidence of such. (PageID.1307). Plaintiff also "complained of minimal sleep," but the doctor observed that Plaintiff "did not look the least bit tired." (PageID.1307). The doctor concluded that, "it would have taken hours for me to address all the issues [Plaintiff] tossed out. The overwhelming impression I get is attention-seeking behavior." (PageID.1307).

On June 9, 2015, Plaintiff met with Dr. Lapo. (PageID.1286-90). The doctor observed that Plaintiff "seems dramatic" and, moreover, that Plaintiff's "complaints seem out of proportion to her presentation." (PageID.12-8788). The doctor also noted that Plaintiff "does not look anxious." (PageID.1288).

On July 28, 2015, Plaintiff met with Dr. Lapo. (PageID.1281-85). The doctor noted that "this session was remarkable for [Plaintiff's] manipulative behavior/speech." (PageID.1282). Specifically, Dr. Lapo noted the following:

8

> This session distilled: histrionic and medication-seeking behavior. Her complaints are overwhelming, of the utmost severity, not matched by presentation, she seems to enjoy talking about herself to such an extent that she interrupts me if I try to ask questions (this of course may also be an attempt to keep me from narrowing down specific symptoms and doing a legitimate inquiry, which I would be forced to do regardless were I actually prescribing her pain medications). And then she wants more Xanax.

(PageID.1282).

**II.        Dr. Charles Lapo**

On March 26, 2014, and again on May 14, 2014, Dr. Lapo completed Medical Source Statements suggesting that Plaintiff's non-exertional impairments limited her to a degree greater than that recognized by the ALJ. (PageID.1061-66, 1068-73). The ALJ afforded "limited weight" to these opinions. (PageID.53). Plaintiff asserts that she is entitled to relief because the ALJ did not provide sufficient reasons for discounting the opinions of her treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979

at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

In a Mental Medical Source Statement dated March 26, 2014, Dr. Lapo assessed Plaintiff's abilities in various "aptitudes." With respect to Plaintiff's "mental abilities and aptitudes needed to do unskilled work," the doctor rated Plaintiff's abilities in sixteen separate areas. (PageID.1063). The doctor reported that Plaintiff was "unable to meet competitive standards" in one area, was "seriously limited" in seven areas, was "limited but satisfactory" in seven areas, and was "unlimited" in one area. (PageID.1063).

With respect to Plaintiff's "mental abilities and aptitudes needed to do semiskilled and skilled work," the doctor rated Plaintiff's abilities in four separate areas. (PageID.1064). The doctor reported that Plaintiff was "seriously limited" in three areas and was "limited but satisfactory" in one area. (PageID.1064). With respect to Plaintiff's "mental abilities and aptitude needed to do particular types of jobs," the doctor rated Plaintiff's abilities in five separate areas. (PageID.1064). The doctor reported that Plaintiff was "limited but satisfactory" in all five areas. (PageID.1064).

The doctor also reported that Plaintiff found the following "demands of work" to be stressful: complexity, working with other people, and remaining at work for a full day.

(PageID.1065). Dr. Lapo rated Plaintiff's then present GAF score as 35.[5] (PageID.1061). The doctor also reported that Plaintiff's "highest GAF" score within the past year was 40. (PageID.1061).

Less than months later, on May 14, 2014, Dr. Lapo completed another Mental Medical Source Statement. (PageID.1068-73). While Dr. Lapo declined to complete certain portions of this report, the doctor again assessed Plaintiff's abilities in various "aptitudes." With respect to Plaintiff's "mental abilities and aptitudes needed to do unskilled work," the doctor rated Plaintiff's abilities in sixteen separate areas. (PageID.1070). The doctor reported that Plaintiff was "unable to meet competitive standards" in one area, was "seriously limited" in ten areas, and was "limited but satisfactory" in four areas. (PageID.1070). The doctor failed to assess Plaintiff's ability with respect to her ability to "sustain an ordinary routine without special supervision." (PageID.1070).

With respect to Plaintiff's "mental abilities and aptitudes needed to do semiskilled and skilled work," the doctor rated Plaintiff's abilities in four separate areas. (PageID.1071). The doctor reported that Plaintiff was "seriously limited" in all four areas. (PageID.1071). With respect to Plaintiff's "mental abilities and aptitude needed to do particular types of jobs," the doctor rated Plaintiff's abilities in five separate areas. (PageID.1071). The doctor reported that Plaintiff was "seriously limited" in one area and "limited but satisfactory" in four areas. (PageID.1071).

The doctor also reported that Plaintiff found the following "demands of work" to be stressful: speed, precision, complexity, deadlines, working within a schedule, making decisions,

---

[5] A GAF score of 35 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school"). DSM-IV at 34.

exercising independent judgment, completing tasks, working with other people, dealing with the public, being criticized by supervisors, getting to work regularly, remaining at work for a full day, and fear of failure at work. (PageID.1072). The doctor declined to respond to the question whether "alcohol or substance abuse" contributed to Plaintiff's alleged functional limitations. (PageID.1073).

The ALJ discussed at length Dr. Lapo's opinions and concluded that such were entitled to only "limited weight." (PageID.53). Specifically, the ALJ concluded:

> The opinions made by Dr. Lapo are only two months apart; however, they differ greatly in that the later opinion is much more restrictive. There is no evidence to support a significantly more restrictive opinion. Moreover, Dr. Lapo's opinions are inconsistent. In July 2015, Dr. Lapo remarked that the claimant "does not look like a sick woman". He also stated that his "overwhelming impression" was that the claimant was engaging in "attention seeking behavior". Dr. Lapo also reported that he suspected that he was being mislead by the claimant (46F/29). Because of these inconsistencies, the undersigned assign[s] limited weight to the opinion of Dr. Lapo.

(PageID.53).

The ALJ's decision to afford less than controlling weight to Dr. Lapo's opinion is supported by substantial evidence. First, the forms that Dr. Lapo completed do not constitute a "medical opinion" to which deference must be accorded. *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *see also*, *Ashley v. Commissioner of Social Security*, 2014 WL 1052357 at *7-8 (W.D. Mich., Mar. 19, 2014) (where "check-box forms" are unaccompanied by explanation, treatment notes, or other evidence, ALJ properly

12

rejected such).   While Dr. Lapo rated Plaintiff's aptitudes in various categories, the doctor's responses do not articulate any specific functional limitations for Plaintiff.   The same is true for the doctor's identification of certain aspects of work that Plaintiff allegedly considers stressful.   It is likely that most working people find such things stressful to a certain degree.   The recognition of such stressors, however, provides absolutely no insight on the extent to which, if at all, such limit Plaintiff's ability to function in a particular work environment.

Also, as the ALJ noted, Dr. Lapo's second Mental Medical Source Statement, completed less than two months after the first, suggests that Plaintiff's ability to function severely deteriorated from March 2014 to May 2014.   The medical record discussed above undercuts Dr. Lapo's opinion in several ways.   First, the record does not support the limitations articulated by Dr. Lapo in his initial March 26, 2014 report.   Second, the record does not suggest that between March 26, 2014, and May 14, 2014, Plaintiff's condition deteriorated.   Finally, in his earlier March 26, 2014 report, Dr. Lapo stated that Plaintiff's "highest GAF" score during the past year was 40.   (PageID.1061).   This is not accurate.   On June 25, 2013, Dr. Lapo rated Plaintiff's GAF score as 55.   (PageID.745).

In sum, the ALJ articulated good reasons for discounting Dr. Lapo's opinion and the ALJ's reasons are supported by substantial evidence.   Accordingly, this argument is rejected.

**III.**           **Additional Argument**

Plaintiff appears to have asserted the additional argument that the ALJ improperly afforded little weight to the statements offered by Plaintiff's family and friends.   Several of Plaintiff's family members and former co-workers submitted statements in support of Plaintiff's claim for benefits.   (PageID.376-77, 382-8).   The ALJ considered these statements, but afforded

13

them "little weight because the claimant's family and friends are not acceptable medical sources." (PageID.54).

Plaintiff takes issue with the ALJ's assessment. The entirety of Plaintiff's argument is that "[a]lthough Claimant's family and friends may not have the medical expertise regarding the Claimant's medical conditions, they are in the best position to make comments on how they have seen it affect the Claimant's quality of life." (ECF No. 13 at PageID.1388). This statement fails to articulate or identify any error by the ALJ.

Opinions expressed by non-treating sources such as Plaintiff's family and co-workers are not entitled to any deference and the ALJ is not required to articulate good reasons for discounting such. *See, e.g., Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). Instead, the ALJ is simply required to consider such opinions and accord such the weight he finds appropriate. *See, e.g., Engebrecht v. Commissioner of Social Security*, 572 Fed. Appx. 392, 397-98 (6th Cir., July 14, 2014); *see also*, *Mullins v. Commissioner of Social Security*, 2015 WL 3441163 at *13 (E.D. Mich., May 28, 2015) ("the ALJ is not required to give any perceptible weight to lay opinion testimony that does not comport with the medical evidence").

The ALJ considered the opinions in question and afforded such limited weight. While Plaintiff may disagree with the ALJ's assessment of these opinions, she has failed to identify any error on the ALJ's part. The Court nevertheless notes that the opinions offered by Plaintiff's former co-workers indicate that Plaintiff cannot perform her previous work, a conclusion with which the ALJ agreed. The opinions offered by Plaintiff's family members support the conclusion that Plaintiff experiences various impairments which limit her ability to function, a conclusion with which the ALJ did not disagree. To the extent Plaintiff's friends and family

14

suggest that Plaintiff is more limited than the ALJ recognized, such is not supported by the medical record.   This argument is, therefore, rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Dated: March 7, 2018 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge